# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> OLIVIA TAMAYO, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> HARRIS FARMS, INC., <br><br> Defendant. | CIV F 02-6199 AWI LJO <br><br> ORDER ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW |

After a 23 day jury trial that began in December 2004 and ended in January 2005, a jury awarded Plaintiff-Intervenor Olivia Tamayo approximately $1 million. Defendants have filed 3 motions. This order resolves Defendant's renewed motion for judgment as a matter of law with respect to punitive damages.

*Defendant's Argument*

Defendant argues that there was no legally sufficient basis for the jury to find for Plaintiffs on the issue of malice or reckless disregard of Ms. Tamayo's rights. Defendant argues that the evidence showed that on every instance that Tamayo complained of harassment, Defendant took action to remedy the situation. Defendant also argues that it had a policy against harassment, made good faith efforts to prevent harassment, and took appropriate action when

other employees lodged complaints of harassment.

Defendant specifically points out that the Court stated that the issue of malice and reckless disregard was very close, but would let the jury decide. Defendants argue that there is no evidence of ill-will, spite or egregious behavior on the part of Defendant, nor evidence that Defendant acted with knowledge that its actions violated the law. See Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999).

Defendant states that it is undisputed that if Rodriguez was engaging in harassment of Ms. Tamayo, Defendant did not have knowledge of it until 1999. When Tamayo finally reported Rodriguez, Defendant argues that it took action immediately, suspending Rodriguez and transferring him to another area of operation, and also called the County Sheriff. Then, three weeks later, the complaint was amended to include Tamayo's claim of rape and Defendant investigated. Finally, two years later when Tamayo complained of co-worker harassment, Defendant investigated and suspended or fired those involved.

Also, there is substantial evidence of good faith. Defendant in 1999 helped Tamayo obtain a TRO; in 1997, Defendant acted promptly to help Maria Martinez when she complained of harassment (which ended the harassment); and Defendant had a policy against discrimination and harassment and regularly trained supervisors and employees.

Finally, the only evidence of malicious conduct, assuming Plaintiffs' allegations are true, was by Rodriguez. However, Rodriguez's conduct cannot be imputed to Defendant. In *Kolstad*, the Supreme Court made clear that an employer may not be vicariously liable for the discriminatory employment actions of its agents where the actions are contrary to the employer's good faith efforts to comply with Title VII. Assuming Rodriguez's conduct was as alleged, it would clearly have been against Defendant's policy.

*Plaintiffs' Opposition*

Plaintiffs respond that Defendant's motion is based on the argument that there was "no legally sufficient evidentiary basis for the jury to find for Plaintiffs on the issue of malice."

2

Defendant's argument fails as a matter of law simply because the jury's award does not require a finding of malice, rather punitive damages may be based on a finding of either malice or reckless disregard for Tamayo's federally protected rights. A finding of malice is not necessary. The jury found that Defendant acted with malice or reckless disregard and the affidavits of the two jurors (Stepp and Arambula)[1] show that the juror found that there was evidence of reckless disregard. That is all that is necessary to support the award of damages.

*Defendant's Reply*

Defendant argues that Plaintiffs's opposition is without merit and the Defendant is entitled to judgment. Defendant argues that Plaintiffs' opposition "completely misconstrues" the motion and applicable law. Plaintiffs seem to argue that Defendant does not dispute the finding of "reckless disregard." Plaintiffs merely respond that the jury found "reckless disregard" and that is enough to support an award of punitive damages. Defendant argues that Plaintiff's response completely misses the point of Defendant's motion: there was no legally sufficient evidence to support an award of punitive damages. Given the number of times that Defendant stated this contention in its motion, that there was no evidence or no legally sufficient evidence of malice or reckless disregard, Plaintiffs' opposition is ridiculous. Furthermore, it does not matter that the jury found "reckless disregard," because there must still be sufficient evidence to support such a finding.

**LEGAL STANDARD**

"A district court may set aside a jury verdict and grant judgment as a matter of law 'only if, under the governing law, there can be but one reasonable conclusion as to the verdict.'" Settlegoode v. Portland Pub. Schs, 371 F.3d 503, 510 (9th Cir. 2004); Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001); Fed. R. Civ. Pro. 50. When considering a motion to set aside a jury verdict, the court "should review all of the evidence in

---

[1] This evidence is inadmissible under Rule of Evidence 606(b) because the affidavits, from jurors, discuss and pertain to the jury's deliberative process. See Fed. R. Evid. 606(b); Hard v. Burlington Nothern R.R. Co., 870 F.2d 1454, 1461 (9th Cir. 1989). The Court will not consider these affidavits in resolving this motion.

the record" in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000); see also Settlegoode, 371 F.3d at 510; City Solutions v. Clear Channel Communs., Inc., 365 F.3d 835, 839 (9th Cir. 2004); Horphag Research, Ltd, v. Pellegrini, 337 F.3d 1036, 1040 (9th Cir. 2003). The court "may not make credibility determinations or weigh the evidence" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves, 530 U.S. at 150-51; Settlegoode, 371 F.3d at 510. "The court must accept the jury's credibility findings consistent with the verdict . . . [and] may not substitute its view of the evidence for that of the jury." Winarto, 274 F.3d at 1283. A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion. Freund v. Nycomed Amersham, 347 F.3d 752, 760-61 (9th Cir. 2003).

Punitive damages are appropriate when a "defendant's conduct was malicious or in reckless disregard of the plaintiff's rights." Ninth Circuit Model Jury Instruction § 7.5 – Punitive Damages.[2] Conduct is considered malicious if it is "accompanied by ill will, or spite, or if it is for the purpose of injuring another." Id. Conduct is considered to be in reckless disregard of a plaintiff's rights "if, under the circumstances, it reflects complete indifference to the plaintiff's safety [or] rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law." Id. In order to impose punitive damages against a corporation for violations Title VII, a plaintiff must: (1) prove that the employer engaged in a discriminatory practice with malice or a reckless indifference to the federally protected rights of an aggrieved individual; (2) prove that liability is properly imputed to the employer; and (3) defeat the employer's affirmative defense (if asserted) that it made good faith efforts to comply with Title VII. Kolstad, 527 U.S. at 534-35; Hemmings v. Tidyman's, Inc., 285 F.3d 1174,

---

[2]This instruction is found at:
http://www.ce9.uscourts.gov/web/sdocuments.nsf/civ?OpenView&Start=1&Count=250&Expand=9#9

4

1197-99 (9th Cir. 2002). "The terms 'malice' or 'reckless indifference' pertain to the defendant's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad, 527 U.S. at 535. Thus, the pertinent question for the first prong is whether the defendant "acted in the face of a perceived risk that its actions will violate federal law." Id. at 536; Hemmings, 285 F.3d at 1197. Evidence of retaliation, lying about actions taken as part of a scheme to cover up harassment, intentional conduct, or conduct performed with knowledge of anti-discrimination principles or policies may also fulfill the first prong. See Hemmings, 285 F.3d at 1198-99 (and cases cited therein); Passantino v. Johnson & Johnson Consumer, 212 F.3d 493, 515-16 (9th Cir. 2000). To impute liability to the employer under the second prong, the plaintiff must show that the discrimination by an employee is attributable to the employer by using traditional agency principles, for example, that a managerial employee acted within the scope of his or her employment. Kolstad, 527 U.S. at 540-41; Hemmings, 285 F.3d at 1198. Finally, good faith efforts to comply with Title VII through an anti-discrimination policies are insufficient if the policies are not enforced or are ineffective. See Bains LLC v. Arco Prods. Co., 405 F.3d 764, 774 (9th Cir. 2005); Costa v. Desert Palace, Inc., 299 F.3d 838, 864 (9th Cir. 2002). The good faith affirmative defense is also not available where the improper conduct is committed by agents of the corporation who are sufficiently senior so as to be considered proxies for the corporation. See Hemmings, 285 F.3d at 1198.

## DISCUSSION

As applied to this case, there is sufficient evidence to support the award of punitive damages. First, evidence was presented that Defendant had an out of date written policy against sexual harassment. For example, the policy did not describe conduct that could constitute sexual harassment or have an anti-retaliation provision. From 1989 until 2001, the same policy, without any updates, was in force and distributed to Defendant's employees. Despite testimony from Erick Johnson (former executive vice president) and John Harris (president) that they knew that

the policy was out of date, no revisions or up-dates of Defendant's policy were printed or distributed.[3]

Second, when Tamayo made complaints, negative evidence was introduced concerning the investigations. Evidence was presented that the translations of reports or interviews involving Tamayo were inaccurate. In particular, the summary in Spanish of the August 18, 1999, meeting where Tamayo reported the rapes was partly translated by the court interpreter before the jury, and the official interpretation was nonsensical. This was a document that Tamayo understandably refused to sign/adopt as an accurate reflection of the meeting and her complaints. Additionally, Tamayo had suspicions that the contemporaneous translations to Deputy Crittenden were inaccurate. The inaccuracy of the August 18, 1999, translation and Tamayo's own concerns about translation cast doubts on the translating involved during Defendant's investigation.

Also, evidence was presented that after the conclusion of Tamayo's first complaint against Rodriguez (for grabbing her arm and harassing her), Tamayo was assigned to work in a field near Rodriguez's home. Although Tamayo's supervisor, Raul Enriquez, admitted that he assigned Tamayo to work in the field near Rodrgiuez's home, he was not told by human resources that Tamayo had filed a complaint against Rodriguez or that the two should be kept apart. Similarly, when Tamayo reported Rodriguez's truck driving slowly back and forth near the field where she was working and that she was afraid, no further formal action appears to have been taken.

On August 18, 1999, two days after the "drive by" incident, evidence was presented that Tamayo reported to Defendant's human resources department that Rodriguez had raped her. Although Defendant had called Deputy Sheriff Crittenden to investigate the "grabbing incident" involving Rodriguez, Crittenden was not contacted about the rapes. Moreover, Rodriguez was

---

[3] Although Defendant presented evidence that it distributed sexual harassment bulletins and conducted informal "tailgate" meetings, Plaintiffs presented testimony from former Harris Farms's employees who refuted this.

6

not interviewed regarding the rapes until September 29, 1999, approximately six weeks after Tamayo reported the rapes. During this six week period, Tamayo filed a complaint with the EEOC on September 24, 1999. Despite the seriousness of the allegations, no further discipline was taken and no final report or findings were made by Defendant/the human resources department. Instead, the status quo remained and Rodriguez retired in December 1999.

Also, testimony was presented that between 1999 and 2001, rumors regarding Tamayo and Rodriguez were being spread. The rumors evolved into threats of violence, specifically that Rodriguez was willing to pay $2,000 to have Tamayo drugged and then have pictures made showing her having sex. The pictures would then be sent to Tamayo's husband in order to break up the marriage. Additionally, rumors/gossip was spread that Tamayo preferred to be on top of men during sex. Tamayo complained of these rumors in late twice in late January 2001 to her immediate supervisors. On February 2, 2001, Tamayo went to the office and told the human resources director, Sylvia Gomez,[4] about the rumors, said that employees Hernandez, Mendoza, and Mosqueda were spreading the rumors, said that she was scared, and requested not to work alone. The following day Tamayo returned to the office and was informed that her request to be transferred to a job where she would not work alone was denied. Tamayo then requested that she and two witnesses to the gossip/rumors (Gustavo and Lourdes Ramirez) speak with Larry Chrisco, the farm manager. Despite the violent nature of the rumors and Tamayo's fears, Tamayo and her witnesses did not meet with Chrisco until approximately three weeks later on February 21, 2001. At the meeting with Chrisco, the gossip and rumors were related to Chrisco by both Tamayo and her witnesses. Additionally, the Ramirezes told Chrisco that their work vehicles had been vandalized prior to the meeting. Specifically that the tires of Gustavo's truck had been slashed and hydraulic lines on Lourdes's vehicle had been cut.

Gomez began an investigation that ended on March 12, 2001. Gomez concluded that

---

[4] In the interim between Tamayo's 1999 and 2001, Sylvia Gomez was internally promoted to human resources director.

there were two groups involved in the rumors, one group consisting of Tamayo and the Ramirezes and a second group consisting of Hernandez, Mendoza, and Mosqueda. All involved in the gossip/rumors were disciplined, including Tamayo and the Ramirezes. Tamayo was suspended for one day without pay and given a final written warning about engaging in sexually inappropriate behavior at the work place. Chrisco had recommended that everyone involved be suspended without pay for two weeks. Gomez concluded that Tamayo had participated in the gossip and made sexually inappropriate comments, but no specific evidence was introduced to support this conclusion. Gomez also refused to tell Tamayo what was going to happen to the other workers involved. Three of the workers involved, Lourdes Ramirez (one of Tamayo's witnesses), Mendoza, and Mosqueda were terminated because of prior warnings. Even though Tamayo was the one who complained about the gossip against her and sought help, and despite the prior histories of inappropriate gossip and harassment by Mendoza and Mosqueda, Gomez and Defendant's management reached the conclusion that Tamayo had engaged in inappropriate sexual communications/conduct and that discipline was appropriate.

Taken as a whole, the above evidence is sufficient to support a finding that Defendant acted with reckless disregard to Tamayo's rights. The evidence of the failure to transfer jobs, suspension, and a final written warning is sufficient to support the jury's finding of retaliation, which can support an award of punitive damages. See Hemmings, 285 F.3d at 1198-99 (and cases cited therein); Passantino, 212 F.3d at 515-16. The fact that Defendant maintained the same written sexual harassment policy for 12 years with no up-dates or modifications, despite knowing that changes in the law occurred, indicates reckless disregard for rights. Additionally, the out-of-date written policy, the amount of time to investigate complaints (particularly the rape allegation and the 2001 gossip allegation), the conclusion of the 2001 gossip complaint, the non-conclusion reached with respect to the rape allegations, and the translation problems point to an ineffective sexual harassment policy. See Bains LLC, 405 F.3d at 774 (noting that a sexual harassment policy must be enforced); Costa, 299 F.3d at 864 (noting that a sexual harassment

policy must be effective). Finally, the investigations of the 1999 complaints were performed by Defendant's human resources agents and the investigation and retaliatory conduct regarding the 2001 complaint were performed and approved by Defendant's human resources director and management. See Hemmings, 285 F.3d at 1198. The standard for judgment as a matter of law under Rule 50 is very stringent as the court must view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in favor of the nonmoving party, and disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 530 U.S. at 150-51; Settlegoode, 371 F.3d at 510. Viewed in this favorable light, the above evidence is sufficient to show that Defendant acted with reckless disregard to Tamayo's federally protected rights.

## **CONCLUSION**

    Accordingly, for the above reasons, IT IS HEREBY ORDERED that Defendant's renewed motion for judgment as a matter of law is DENIED.

IT IS SO ORDERED.

**Dated:**   **August 25, 2005**                 **/s/ Anthony W. Ishii**
0m8i78                                         UNITED STATES DISTRICT JUDGE