IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | CIV F 02-6199 AWI LJO |
| Plaintiff, | ) ) ) | ORDER ON PLAINTIFF INTERVENOR'S MOTION FOR ATTORNEY'S FEES |
| OLIVIA TAMAYO, | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | |
| HARRIS FARMS, INC., | ) ) | |
| Defendant. | ) ) | |

_____

After a 23 day jury trial that began in December 2004 and ended in January 2005, a jury awarded Plaintiff-Intervenor Olivia Tamayo ("Plaintiff") approximately $1 million under state and federal law for hostile work environment sexual harassment by both a supervisor and co-workers, retaliation, and constructive discharge. Plaintiff now moves for attorney's fees under both California law (Cal. Gov't Code § 12965(b)) and Federal law (42 U.S.C. § 2000e-5(k)). Plaintiff's Notice of Motion at 1. Plaintiff seeks fees for trial counsel, William J. Smith, of $1,218,050.00 and fees for fee counsel, Richard Pearl, of $40,956.30. The amount requested for trial counsel is based on 1,433 hours and a rate of $425 per hour. Plaintiff requests that a modifier of 2 be applied under California law. The amount requested for fee counsel is based on 68.95 hours and a rate of $495 per hour. Plaintiff requests that a modifier of 1.2 be applied under

California law.  For the reasons that follow, the Court finds that attorneys' fees are appropriate, but at a lower amount than requested.

## LEGAL STANDARD

42 U.S.C. § 2000e-5(k) provides the court with discretion to award attorney's fees to the prevailing party and reads as follows:

> (k) Attorney's fee, liability of Commission and United States for costs. In any action or proceeding under this title [42 USCS §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

"A prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  Hensley v. Eckerhart, 461 U.S.  424, 429 (1983);[1] see also Lane v. Residential Funding Corp., 323 F.3d 739, 747 (9th Cir. 2003).  A "prevailing party" for purposes of attorney's fees is a party that "succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Hashimoto v. Dalton, 118 F.3d 671, 677 (9th Cir. 1997).

California's Fair Employment and Housing Act ("FEHA") also makes provision for the award of attorney's fees.  FEHA provides that "in actions brought under this section, the court in its discretion may award to the prevailing party reasonable attorney fees and costs . . . ."  Cal. Gov't Code § 12965(b).  "Generally, under FEHA, a prevailing party should ordinarily be awarded attorney's fees unless special circumstances would render an award unjust." Behne v. Microtouch Sys., 58 F.Supp.2d 1096, 1100 (C.D. Cal. 1999); Steele v. Jensen Instrument Co., 59 Cal.App.4th 326, 331 (1997).

---

[1]*Hensley* was an attorney's fees case under 42 U.S.C. § 1988.  However, "the provision for counsel fees § 1988 was patterned upon the attorney's fees provisions contained in Titles II and VII of the Civil Rights of 1964 . . . . Thus, as the Court in *Hensley* concluded, 'the standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" Schwarz v. Secretary of Health & Human Servs., 73 F.3d 895, 901 n.2 (9th Cir. 1995) (citing Hensley, 461 U.S. at 433 n.7; Hanrahan v. Hampton, 446 U.S. 754, 758 n.4 (1980)).  Accordingly, attorney's fees cases under § 1988 are persuasive for § 2000e-5(k) cases.

1     Prevailing Party

2         As stated above, the jury awarded Plaintiff nearly $1 million in compensatory and

3   punitive damages.[2]  See Court Docket Document Nos. 210, 211.  There is no dispute that

4   Plaintiff-Intervenor is a prevailing party.  Thus, Plaintiff-Intervenor is entitled to attorney's fees

5   pursuant to state and federal law.  See Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1137

6   (9th Cir. 2002).

7   **I.     FEES FOR TRIAL COUNSEL WILLIAM J. SMITH**

8        A.     Lodestar Fee

9         An award of reasonable attorney's fees is determined through the hybrid lodestar

10  multiplier approach.  Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir.

11  2000); McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999); cf. Ketchum v.

12  Moses, 24 Cal.4th 1122, 1133-36 (2001) (discussing the lodestar approach in California).  The

13  Ninth Circuit has explained the hybrid lodestar approach as follows:

14           The lodestar/multiplier approach has two parts.  First, a court determines the
             "lodestar" amount by multiplying the number of hours reasonably expended on
15           the litigation by a reasonable hourly rate.  See D'Emanuelle [v. Montgomery
             Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990)]; Hensley, 461 U.S. at
16           433. The party seeking an award of fees must submit evidence supporting the
             hours worked and the rates claimed.  See Hensley, 461 U.S. at 433. A district
17           court should exclude from the lodestar amount hours that are not reasonably
             expended because they are "excessive, redundant, or otherwise unnecessary." Id.
18           at 434.  Second, a court may adjust the lodestar upward or downward using a
             "multiplier" based on factors not subsumed in the initial calculation of the
19           lodestar.  See Blum v. Stenson, 465 U.S. 886, 898-901 (1984) (reversing upward
             multiplier based on factors subsumed in the lodestar determination); Hensley, 461
20           U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors
             but should consider that many of these factors are subsumed in the lodestar
21           calculation).  The lodestar amount is presumptively the reasonable fee amount,
             and thus a multiplier may be used to adjust the lodestar amount upward or
22           downward only in "'rare' and 'exceptional' cases, supported by both 'specific
             evidence' on the record and detailed findings by the lower courts" that the lodestar
23           amount is unreasonably low or unreasonably high.  See Pennsylvania v. Delaware
             Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (quoting Blum,
24           465 U.S. at 898-901); Blum, 465 U.S. at 897; D'Emanuele, 904 F.2d at 1384,
             1386; Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1989).

25

26   _____

27       [2]The jury awarded Plaintiff-Intervenor a total of $994,000.  This award was later reduced to $794,000 in
     light of the statutory damages cap in 42 U.S.C. § 1981.

28                                              3

Van Gerwen, 214 F.3d at 1045; cf. Ketchum, 24 Cal.4th at 1132-39 (discussing lodestar and multipliers in California).

As stated above, in exceptional cases under federal law and in its discretion, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the *Kerr* factors that have not been subsumed in the lodestar calculation.  See Dang v. Cross, 422 F.3d 800, 812 (9th Cir. 2005); Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 622 (9th Cir. 1993); Gates v. Deukmejian, 987 F.2d 1392, 1402 (9th Cir. 1992).   The original *Kerr* factors were:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

 Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.  1975); see also Benton v. Oregon Student Assistance Comm., 421 F.3d 901, 904 (9th Cir. 2005); cf. Ketchum, 24 Cal.4th at 1132-39.  The initial lodestar calculation, however, has subsumed the following *Kerr* factors: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of the representation; and (4) the results obtained and the superior performance of counsel.  Blum, 465 U.S. at 898-00; Van Gerwen, 214 F.3d at 1045 n.9; Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996).  Furthermore, the Supreme Court has deemed the fixed or contingent nature of the fee to be irrelevant in the fee calculation, thus *Kerr* factor number 6 is no longer considered in federal law.  City of Burlington .v Dague, 505 U.S. 557 (1992); Van Gerwen, 214 F.3d at 1045 n.2; but cf. Ketchum, 24 Cal.4th at 1037-38 (holding that fee may be multiplied under California law based on contingent nature of fee).  "Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable number of hours or reasonable hourly rate at the first step, i.e. when determining the lodestar, is a disfavored procedure."  Morales, 96 F.3d 364 n.9.  Further, the court "need not consider all . . . [*Kerr*] factors, but only those called into question by the case

1    at hand and necessary to support the reasonableness of the fee award." <u>Cairns v. Franklin Mint</u>

2    <u>Co.</u>, 292 F.3d 1139, 1158 (9th Cir. 2002).

3         The Ninth Circuit has explained the application of the"results obtained" factor as follows:

4         In subsequent decisions modifying the <u>Hensley</u> holding, the Court has held that "the

5           'results obtained' generally will be subsumed within other factors used to calculate a
            reasonable fee." <u>Blum</u>, 465 U.S. at 900, 104 S.Ct. at 1549; <u>Delaware Valley I</u>, 478 U.S. at

6           565; <u>Corder v. Gates</u>, 947 F.2d 374, 378 (9th Cir.1991); <u>Cunningham</u>, 879 F.2d at 488;
           <u>Jordan</u>, 815 F.2d at 1262 & n. 6.  Thus, the favored procedure is for the district court to

7           consider the extent of the plaintiff's success in making its initial determination of hours
           reasonably expended at a reasonable rate, and not in subsequent adjustments to the

8           lodestar figure. <u>Corder</u>, 947 F.2d at 378; <u>Cabrales v. County of Los Angeles</u>, 864 F.2d
           1454, 1464 (9th Cir.1988).

9    <u>Deukmejian</u>, 987 F.2d at 1404.  Further, "courts should not reduce lodestars based on relief

10    obtained simply because the amount of damages recovered on a claim was less than the amount

11    requested.  Rather, the relief obtained justifies a lower fee if plaintiffs fail to obtain relief on all

12    claims, and if hours spent on unsuccessful claims were not needed to pursue successful claims."

13    <u>Quesada v. Thomason</u>, 850 F.2d 537, 539-40 (9th Cir. 1988).  As the Ninth Circuit has

14    explained:

15         "Where a plaintiff has obtained excellent results, his attorney should recover a
           fully compensatory fee." <u>Hensley</u>, 461 U.S. at 435. When "a plaintiff has

16           achieved only partial or limited success, [however,] the product of hours
           reasonably expended on the litigation as a whole times a reasonable hourly rate

17           may be an excessive amount." <u>Id.</u> at 436. Nonetheless, a plaintiff does not need to
           receive all the relief requested in order to show excellent results warranting the

18           fully compensatory fee. <u>Id.</u> at 435 n.11; <u>Sorenson v. Mink</u>, 239 F.3d 1140, 1147
           (9th Cir. 2001).

19

20    <u>Dang</u>, 422 F.3d at 813.

21         Thus, to determine reasonable attorney's fees, the court must first determine a "lodestar"

22    amount by multiplying the number of hours reasonably expended on the litigation by a

23    reasonable rate.  Second, the court may increase or decrease the lodestar fee in its discretion

24    based on the *Kerr* factors that are not subsumed within the initial calculation of the lodestar.

25    Such upward or downward departures are the exception, because the lodestar amount is

26    presumed to constitute a reasonable fee.

27

28                     5

1   1.  Number of Hours

2      In determining the original lodestar figure, a district court should exclude from its initial

3   calculation hours that are "excessive, redundant, or otherwise unnecessary," i.e. hours that were

4   not "reasonably expended." Hensley, 461 U.S. at 434; Dang, 422 F.3d at 812 n.12; In re

5   Dawson, 390 F.3d 1139, 1152 (9th Cir. 2004).  The Supreme Court has held:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee
> request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in
> private practice ethically is obligated to exclude such hours from his fee submission. 'In
> the private sector, "billing judgment" is an important component in fee setting.  It is no
> less important here.  Hours that are not properly billed to one's client also are not
> properly billed to one's adversary pursuant to statutory authority.'

Hensley, 461 U.S. at 434.  The fee applicant bears the burden of documenting the appropriate

hours expended in the litigation and must submit evidence in support of those hours worked.  Id.

at 433, 437; Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Deukmejian, 987 F.2d at

1398-99; cf. ComputerXpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1020 (2001) (noting fee

applicant has burden of documenting hours expended and hourly rates); Fed-Mart Corp. v. Pell

Enterprises, Inc., 111 Cal.App.3d 215, 224 (1980) (same).  "Plaintiff's counsel . . . is not

required to record in great detail how each minute of his time was expended," even "minimal"

descriptions that establish that the time was spent on matters on which the district court may

award fees is sufficient.  Lytle v. Carl, 382 F.3d 978, 989 (9th Cir. 2004).  Counsel need only

"identify the general subject matter of [their] time expenditures."  Trustees of Dirs. Guild of

Am.-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000); see also Lytle,

382 F.3d at 989; cf. Steiny & Co. v. California Elec. Supply Co., 79 Cal.App.4th 285, 293 (2000)

(holding that an attorney's testimony/declaration was sufficient basis for award); Sommers v.

Erb, 2 Cal.App.4th 1644, 1651 (1992) (affirming fee award based on attorney's declaration that

outlined various tasks and procedures and estimated the total amount of hours spent).  However,

where "the documentation is inadequate, the district is free to reduce an applicant's fee award

accordingly." Tise, 234 F.3d at 427; see also In re Dawson, 390 F.3d 1139, 1152 (9th Cir. 2004).

The party opposing the fee application has a burden of rebuttal that requires submission of

6

evidence that challenges the accuracy and reasonableness of the hours charged or challenges the facts asserted by the prevailing party.   McGrath v. County of Nevada, 67 F.3d 248, 255-256 (9th Cir. 1995); Gates v. Gomez, 60 F.3d 525, 534-35 (9th Cir. 1995); Deukmejian, 987 F.2d at 1398-99.

In her motion for attorney's fees, Plaintiff contends that Mr. Smith has reasonably spent a total of 1433 hours to date in this matter.  In support of this contention, Mr. Smith has submitted two affidavits, approximately 45 pages of time entries, and the affidavits of EEOC counsel.  The 45 pages of time entries consist of a date, hours spent on a task divided in tenths of an hour, and a description of the task performed.  The time entries begin in September 2003.

In opposition to the number of hours requested by Plaintiff, Defendant contends that the number of hours invested in this case is excessive.  Defendant argues that because EEOC attorneys were involved, the work performed by Plaintiff's counsel was duplicative and that an unspecified reduction in the hours claimed is necessary.  See EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1288 (7th Cir. 1999) (affirming trial courts reduction of fees by 50% given EEOC involvement with prosecuting the case).  Defendant also has submitted a declaration that indicates that the total time billed by local Fresno defense counsel (including associates and paralegals) was 939 hours.  Defendant also argues that Mr. Smith's reproduced billing records are insufficiently detailed and are not supported by other evidence.  Finally, Defendant has pointed out approximately 14 specific instances of arguably "unreasonably" billed time.  Plaintiff has addressed most of these arguments and the specific instances of "unreasonable" time in reply materials.  Although Plaintiff adequately addresses a number of Defendant's arguments, some reductions are warranted.

## ADEQUACY OF BILLING RECORDS

Defendant argues that Mr. Smith's reproduced billing records are insufficiently detailed and that there is no "other evidence" to support the billing records.  See Frank Music Corp. v. Metro-Goldwyn-Meyer, Inc., 886 F.2d 1545, 1557 (9th Cir. 1989).  However, counsel need only

provide minimal detail so long as counsel identifies the general subject matter of his time expenditures.  Lytle, 382 F.3d at 989; Tise, 234 F.3d at 427; cf. Sommers, 2 Cal.App.4th at 1651. Mr. Smith has submitted approximately 45 pages that consist of a date, hours spent on a task divided in tenths of an hour, and a description of the task performed.  The descriptions are not always overly detailed and as particular as possible, but they mostly identify the general subject matter of the time expenditure and are thus, sufficiently detailed for purposes of a fee award.  See Lytle, 382 F.3d at 989; Tise, 234 F.3d at 427; Steiny & Co, 79 Cal.App.4th at 293; Sommers, 2 Cal.App.4th at 1651.  Further, the declarations of Mr. Smith and the lead EEOC counsel, Linda Ordonio-Dixon ("Dixon"), support the billing records.  See Dixon Declaration at ¶¶ 5, 9-12; Supplemental Dixon Declaration at ¶¶ 3-19; Smith Declaration at ¶ 50; Supplemental Smith Declaration at ¶ 2; Second Supplemental Smith Declaration at ¶¶ 2, 5-12, 15.  Mr. Smith's billing records are sufficient.  See Lytle, 382 F.3d at 989; Tise, 234 F.3d at 427; Frank Music, 886 F.2d at 1557; cf. Steiny & Co, 79 Cal.App.4th at 293; Sommers, 2 Cal.App.4th at 1651.

SPECIFICALLY CHALLENGED BILLING ENTRIES

1.    *March 19, 2004 – 4.5 hours for Preparation and Review of Plaintiffs' Fourth Set of Requests For Production*

Defendant argues that this expenditure is unreasonable because the requests for production were not signed by Smith and were propounded solely by the EEOC.

In reply, Plaintiff relies on the Supplemental Declaration of Ms. Dixon.  Ms. Dixon declares that Smith helped to prepare the requests for production and does not know why Mr. Smith's signature does not appear on the requests.  Supplemental Dixon Declaration at ¶ 8.  Ms. Dixon declares that 800 documents from Ruth Evans were reviewed prior to the preparation of the requests for production.  Id. at ¶ 7.  Dixon declares that the documents took time to review because many were in various stages of preparation and some were written in Spanish.  Id.  As part of the discussions leading to the preparation of the requests for production, Ms. Dixon declares that she and Mr. Smith discussed information regarding Sylvia Gomez's (Defendant's current human resources director) sparse experience and discussed that many documents

8

regarding Defendant's investigation of Tamayo's case were missing.  Id. at ¶ 8.  Further, the termination of two of Plaintiff's witnesses were discussed.  These discussions formed the basis for the requests for production that were typed by Ms. Dixon.  Id.

Discussion

Ms. Dixon's declaration makes it clear that Mr. Smith participated in the preparation of the requests for production.  Given that 800 documents were at least partially reviewed, and given the discussions to determine what further information was necessary, the 4.5 hours billed is reasonable.

2.   *April 2, 2004 – 4.2 hours for Preparation of Plaintiffs' Supplemental Initial Disclosures*

Defendant argues that this expenditure is unreasonable because the disclosures were submitted by the EEOC without Mr. Smith's signature and consisted solely of documents in the EEOC's possession that were received during investigation of Ms. Tamayo's charge.

In reply, Plaintiff relies on the Supplemental Declaration of Ms. Dixon.  Ms. Dixon declares that the supplemental initial disclosures consisted of identifying further witnesses, calculations for Ms. Tamayo's backpay, and the production of 70 documents that were obtained from Shirley Butts (Defendant's former independent human resources consultant) which were not received during the EEOC's investigation.  Supplemental Dixon Declaration at ¶ 9.  A chart was prepared by Mr. Smith's offices, after evaluating pay records, to explain the basis for backpay; the chart was disclosed and used at trial as Joint Exhibit 203.  Id.  Additionally, Ms. Dixon and Mr. Smith had lengthy discussions about potential witnesses who were located and interviewed by the EEOC.  Id.  Ms. Dixon believes that the 4.2 hours billed by Smith is low.  Id.

Discussion

Ms. Dixon's declaration shows that Mr. Smith participated in the preparation of the supplemental disclosures.  The participation as described shows that Mr. Smith reviewed 70 pages of documents from Shirley Butts, discussed various witnesses who had been found and

interviewed by the EEOC, and prepared a chart that explained the basis of backpay.  Ms. Dixon does not explain how many witnesses the EEOC had identified or interviewed, nor does she describe the nature of the 70 pages received from Shirley Butts.  Joint Exhibit 203 is a one page exhibit that consists of nine vertical columns and figures for interest, wages, mitigation, date, and "total."  There are many figures on the exhibit that explain the basis for the backpay calculation and the exhibit covers 37 months.  The preparation of Exhibit 203 clearly took time to create.  Nevertheless, preparation of exhibit 203 does not appear to be the kind of task that the lead litigator or an attorney with Mr. Smith's experience should primarily undertake.  Considering the nature of the exhibit, the review of 70 pages, and discussions regarding witnesses who had already been discovered and interviewed by the EEOC, the Court finds that the hours should be reduced by 1.2 hours and that 3.0 hours is a reasonable expenditure of time for these tasks.  Cf. Tise, 234 F.3d at 427; AIC Security, 55 F.3d at 1288; Ketchum, 24 Cal.4th at 1132 (noting that the court may reduce or deny a fee request that appears unreasonably inflated or has padded hours); PLCM Group, Inc. v. Drexler, 22 Cal. 4th 1084, 1095-96 (2000) (recognizing that the "experienced trial judge is the best judge of the value of professional services rendered in his court."); Greene v. Dillingham Const. N.A., 101 CalApp.4th 418, 426 (2002) (noting that the trial court has discretion in setting the reasonable hours spent and approving of *Meister*); Akins v. Enterprise Rent-A-Car, 79 Cal.App.4th 1127, 1134 (2000) (noting the substantial discretion of the trial court); Meister v. Regents of California, 67 Cal.App.4th 437, 448-450, 455 (1998) (noting that the court has discretion in setting the reasonable hours spent and may reduce or deny a fee request for hours that appears unreasonably inflated).

       3.     *February 4-5, 2004 – 14.8 hours for Preparation and Depositions of Alma Rodriguez and Rene Rodriguez, Jr.*

Defendant argues that this expenditure is unreasonable because Mr. Smith attended only by telephone, began participation over one hour late, and was present for less than 9 hours of testimony.

In reply, Defendant relies on the Supplemental Declaration of Ms. Dixon.  Ms. Dixon declares that both prior to and after these depositions, she had lengthy discussions with Mr. Smith about the testimony.  Supplemental Dixon Declaration at ¶ 12.  Dixon declares that they had received information about the witnesses that required a background check.  Additionally, after Rodriguez, Jr.'s testimony on February 4, it was decided that the driving time between Tamayo's home and Rodriguez's home had to be determined in order for Rodriguez, Jr.'s testimony to make sense.  Ms. Dixon declares that both she and Mr. Smith appeared telephonically but were connected an hour late because of her miscalculation of the time difference.  Id.  Additionally, Ms. Dixon declares that she and Mr. Smith would "always discuss and agree upon ahead of depositions the subject matter we would each address so that there was no duplication."  Id. at ¶ 13.

Discussion

Defendant argues that there was under 9 hours of actual deposition time.  Assuming approximately 9 hours for two depositions, the Court does not believe that approximately 5 hours of preparation and post-deposition(s) discussion is unreasonable.  The Court finds that no reduction is warranted and that 14.8 hours is a reasonable figure.

4.      *April 12-13, 2004 – 11.5 hours for Preparation and Attendance of the Depositions of Lourdes Ramirez and Maria Martinez*

Defendant argues that this expenditure is unreasonable because Mr. Smith did not ask a single question and the witnesses were "jointly presented" by EEOC counsel.

In reply, both Mr. Smith and Ms. Dixon declare that they did not ask questions of these individuals as Ramirez and Martinez were Plaintiffs's witnesses.  Additionally, although in connection with the April 4 and 5 depositions, Mr. Smith declares that: "I saw my role as independent of the EEOC, requiring that I fully prepare to represent my client's interests.  Also, given that I was going to play a prominent role in trying the case, it was essential that I have first-hand knowledge of how the witnesses would react to questioning."  Second Supplemental Smith

1    Declaration at ¶ 7.

2         Discussion

3         The criticism that Mr. Smith did not ask questions is adequately answered: Ramirez and

4    Martinez were Plaintiffs's witnesses, thus there was no need to for him to do so.  Plaintiff does

5    not expressly address the point that these witnesses were "jointly presented" by the EEOC, i.e. it

6    was unnecessarily redundant to have multiple attorneys at these depositions.  Given Mr. Smith's

7    prominent role in the trial of this case, it is reasonable for him to see how these witnesses would

8    react to questions by opposing counsel.  Cf. Dixon Declaration at ¶ 12; Democratic Party of

9    Washington v. Riley, 381 F.3d 1281, 1287 (9th Cir. 2004) (noting that multiple attorneys may

10   reasonable attend hearing to determine demeanor of judge in preparation for further proceedings

11   in which the attorneys will participate).  However, the interests of the EEOC and Ms. Tamayo

12   with respect to these witnesses are closely aligned, if not identical, given the similarity between

13   Title VII and FEHA sexual harassment.[3]  Some participation in the preparation of these witnesses

14   for deposition by Mr. Smith is reasonable, as is his attendance at the depositions.  However,

15   given the similar if not identical interests between Ms. Tamayo and the EEOC with respect to

16   Defendant's liability, and given that these were Plaintiff's witnesses, the presence of both the

17   EEOC and Mr. Smith for the entirety of these depositions and the preparation is redundant.

18   Given the redundancy, 4.5 hours should be deducted and the Court finds that 7 hours is a

19   reasonable time for the preparation and attendance of these depositions by Mr. Smith.  Cf. Tise,

20   234 F.3d at 427; AIC Security, 55 F.3d at 1288; Ketchum, 24 Cal.4th at 1132; Drexler, 22 Cal.

21   4th 1084, 1095-96; Greene, 101 CalApp.4th at 426; Akins, 79 Cal.App.4th at 1134; Meister, 67

22   Cal.App.4th at 448-450, 455.

23

24

25         [3]Prior to Tamayo's intervention as a plaintiff in this case, the EEOC alleged hostile work environment
26   sexual harassment by a supervisor and co-workers, retaliation, and constructive discharge.  See Court's Docket
     Document No. 1.  These claims, as well as FEHA claims, were made by Tamayo in her complaint in intervention.
27   See Court's Docket Document No. 36.

28                                                  12

5.    *September 22, 28, & 29, 2004 – 11 hours for Preparation and Deposition of Amy Oppenheimer (6 hours) and Allan Hedberg (5 hours)*

Defendant argues that this expenditure is unreasonable because Mr. Smith did not ask a single question and the witnesses were "jointly presented" by EEOC counsel.

In reply, Ms. Dixon and Mr. Smith declare that Smith did not ask a question of Dr. Hedberg because Dr. Hedberg left the deposition early for another appointment. Additionally, Dr. Oppenheimer was Plaintiffs's own witness and there was no need to ask questions.

Discussion

That Dr. Hedberg left the deposition early explains why Mr. Smith did not ask his questions. Given Ms. Dixon's supplemental declarations, Ms. Dixon and Mr. Smith had agreed to split questioning so as not to duplicate efforts. See Supplemental Dixon Declaration at ¶ 13. Additionally, it is not surprising that Smith did not question his own witness, Dr. Oppenheimer. However, Plaintiff does not expressly address the presence of multiple attorneys at Dr. Oppenheimer's deposition. As noted above, the EEOC's interest are similar, if not identical, to Tamayo's interest in this Plaintiffs's witness. Furthermore, Dr. Oppenheimer was only designated as a rebuttal witness by Plaintiffs. It is reasonable for Mr. Smith to participate in the preparation of Dr. Oppenheimer for her deposition, and it is also reasonable for Mr. Smith to attend the deposition to see how Dr. Oppenheimer reacts to questioning. Cf. Riley, 388 F.3d at 1287. However, given the presence of the EEOC and that Dr. Oppenheimer was a rebuttal witness (who never testified at trial), attending her 6 hour deposition in full is unreasonable. The Court believes that 3 hours should be deducted and that 3 hours by Mr. Smith for attending the deposition of Dr. Oppenheimer is reasonable; 5 hours for preparation and the deposition of Defendant's expert Dr. Hedberg is reasonable. Cf. Tise, 234 F.3d at 427; AIC Security, 55 F.3d at 1288; Ketchum, 24 Cal.4th at 1132; Drexler, 22 Cal. 4th 1084, 1095-96; Greene, 101 CalApp.4th at 426; Akins, 79 Cal.App.4th at 1134; Meister, 67 Cal.App.4th at 448-450, 455.

6.     *January 5, 6, 7, & 8, 2004 – 45.6 hours for the Preparation, Travel and Deposition of Rene Rodriguez, Sr. (2.6 hours on January 5, 11 hours on January 6, 14 hours on January 7, and 18 hours on January 8)*

Defendant argues that this expenditure is unreasonable because no testimony was taken on January 6, only 4.5 hours of testimony was taken on January 7, and only 6.5 hours of testimony was taken on January 8.  Additionally, Defendant argues that travel time is not compensable.  See In re Washington Public Power Supply System Securities Litigation, 19 F.3d 1291, 1298-99 (9th Cir. 1994).

In reply, Plaintiff relies on the declarations of Mr. Smith and Ms. Dixon.  Mr. Smith declares that all of the time billed is compensable, that Mr. Smith and Ms. Dixon spent many hours "following up" on matters that arose during the deposition and also spent many hours translating the deposition and discussing and analyzing the testimony with Ms. Tamayo for purposes of the case.  Second Supplemental Smith Declaration at ¶ 9.  Ms. Dixon similarly declares that Rodriguez was deposed over a two day period in McAllen, Texas, the first day by Defendant and the second by Plaintiffs.  Supplemental Dixon Declaration at ¶ 10.  Ms. Dixon declares that after the first day, a domestic violence counselor spoke with Ms. Tamayo, Ms. Dixon, and Mr. Smith for at least 2 hours and the use of the counselor provided additional information to aid in the deposition of Rodriguez.  Id.  Ms. Dixon also declares that Rodriguez's first day of testimony "consisted of numerous unexpected representations which were clearly untrue," which caused Mr. Smith and Ms. Dixon to stay up until at least midnight reviewing documents and preparing for questioning.  Id. at ¶ 11.  Finally, Mr. Smith declares that in his experience, most attorneys in the Fresno area bill for their travel time.  Second Supplemental Smith Declaration at ¶ 10.

Discussion

Rene Rodriguez, Sr., was a critical witness in this case as he was alleged to be the primary harasser and to have violently harassed Ms. Tamayo.  Given the importance of Rodriguez's testimony, careful preparation for his deposition is appropriate.  The 2.6 hours in

14

preparation on January 5 is reasonable, as is the 11 total hours spent for actual testimony.  Also, given the importance of Rodriguez's testimony, reviewing that testimony after the first day of the deposition for approximately 2 hours with Ms. Tamayo is reasonable.  Furthermore, additional review of documents and preparation is also appropriate in response to Rodriguez's testimony after the first day.

Defendant's citation to *In re Washington Public Power* is not helpful as that case does not stand for the proposition that an attorney's travel time is not compensable.  Rather, if travel time is compensable in the relevant legal community, then travel time by an attorney may be included in a fee award.  Davis v. City of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993).  Here, the uncontroverted supplemental declaration of Mr. Smith shows that travel time is compensable for Fresno area attorneys.  Accordingly, it is not unreasonable to bill for travel time.

However, Plaintiff does not identify how much travel time was expended to reach McAllen, Texas and does not describe what assertions by Rodriguez caused the need for additional research.  Although Rodriguez's testimony was very important, billing 45.6 hours relative to 11 hours of actual deposition time appears excessive, especially without further elaboration by Mr. Smith and/or Ms. Dixon.  Given these considerations, the Court will reduce the number of reasonably expended hours by 5.6 and find that 40 hours for travel, preparation, and attendance at the deposition of Rodriguez is reasonable.  Cf. Tise, 234 F.3d at 427; AIC Security, 55 F.3d at 1288; Ketchum, 24 Cal.4th at 1132; Drexler, 22 Cal. 4th 1084, 1095-96; Greene, 101 CalApp.4th at 426; Akins, 79 Cal.App.4th at 1134; Meister, 67 Cal.App.4th at 448-450, 455.

   7.    *Preparation and Research for Opposition to Summary Judgment – 43.8 hours*

Defendant argues that this expenditure is unreasonable because the documents were prepared at the EEOC's offices and signed by permission.  Defendant argues that this kind of

time expenditure gives the impression that the EEOC did nothing at all.

In reply, Mr. Smith declares: "As for the opposition to Defendant's motion for summary judgment, I spent at least the time claimed and probably more . . . Anything that had to do with state law was generally done by me, and there were several other instances in which I had reviewed documents and had made changes and/or had my prepared section incorporated into the document which, ultimately, the EEOC's attorneys either executed in my name or indicated that I had approved the document." Second Supplemental Smith Declaration at ¶ 11. Additionally, Ms. Dixon declares:

> Plaintiff's Opposition to Defendant's Motion for Summary Judgment took an enormous amount of time. I recall working very late during the work week and on the weekends. During these times, Mr. Smith and I would be in contact via telephone. The fact checking was tedious, as Defendant made all sorts of assertions which were flat out wrong. In order to respond, we pretty much had to scour the entire case record. Again, we split up the work on this pleading. Most of the pleadings were jointly written by Mr. Smith and me. The parts of the briefs dealing with state law were drafted by Mr. Smith alone. Again, Mr. Smith's office took the lead on preparing the whole opposition for filing and Mr. Smith signed for me on the brief. Mr. Smith's billing of 43 hours seems really low to me. I recall working through the weekend so late that building security had to walk me to my car on several occasions.

Supplemental Dixon Declaration at ¶ 16.

Additionally, although not specifically addressing the opposition to summary judgment, Dixon declares that:

> The research and writing of the pleadings in this case was generally the result of a joint effort by Mr. Smith and me. Our usual practice was to brainstorm about a particular pleading and the issues to be addressed, perform research, and then talk again. We would then repeat the process as necessary until the pleading was complete.

Id. at ¶ 4.

Discussion

From Ms. Dixon's declaration, it is clear that Mr. Smith participated and his office took the lead in preparing the entire opposition for filing. However, Ms. Dixon's declaration also shows that she put in a substantial amount of time working on the opposition as well. Her declaration also shows that she and Mr. Smith would brainstorm, perform research, and then

16

meet again and repeat the process as necessary.  This description of researching and writing

pleadings by its nature indicates redundancy, particularly in the research process.  Additionally,

Defendant's motion for summary judgment was 22 pages and the Defendant submitted 42

undisputed material facts in support of the motion.  See Court Docket Document Nos. 75, 76.

Plaintiffs's joint opposition brief was 35 pages and Plaintiffs submitted 70 undisputed facts in

support of their opposition.  See id. at Nos. 78, 79, 80.  In the opposition brief, approximately 1

½ pages discuss state law matters.  See id. at 78.  The remainder of the brief relies on federal law.

Given the length of the moving papers and given the participation of the EEOC, the Court does

not believe that 43.8 hours is reasonable.  Given the above considerations, a reduction of 11.8

hours is appropriate, and the Court finds that 32 hours is a reasonable expenditure of time under

the circumstances.  Cf. Tise, 234 F.3d at 427; AIC Security, 55 F.3d at 1288; Ketchum, 24

Cal.4th at 1132; Drexler, 22 Cal. 4th 1084, 1095-96; Greene, 101 CalApp.4th at 426; Akins, 79

Cal.App.4th at 1134; Meister, 67 Cal.App.4th at 448-450, 455.


8.    *Preparation and Research on Motions In Limine and Oppositions to Motions In Limine – 46.7 hours[4]*

Defendant argues that this expenditure is unreasonable because the documents were

prepared at the EEOC's offices and signed by permission.  Defendant argues that this kind of

time expenditure gives the impression that the EEOC did nothing at all.

In reply, Mr. Smith declares that he spent the time billed working on the motions in

limine.  Ms. Dixon declares that:

> The [motions in limine] were likewise extremely time consuming for both Mr.
> Smith and me.  After several days of work, it became clear that Mr. Smith and I
> could not complete these motions by the Court's deadline.  At this point, other
> attorneys at the EEOC helped with the writing of the briefs.  However, at all times
> both Mr. Smith and I monitored and reviewed the draft and final versions.  Once
> again we worked late and on the weekends.

---

[4]In opposition, Defendant argues that Plaintiff billed 30 hours for preparation of motions in limine.
However, a review of the time records submitted by Mr. Smith show that he billed 46.7 hours for research and
preparation of motions in limine, including oppositions, supporting memorandum, and replies.

1   Supplemental Dixon Declaration at ¶ 17.

2        Discussion

3        Ms. Dixon's declaration confirms that Mr. Smith worked on the motions in limine.

4   Dixon's declaration also confirms that there was significant EEOC involvement regarding the

5   motions in limine.  Defendant filed 17 motions in limine, later withdrew two of those motions,

6   and Plaintiffs filed non-oppositions (with the understanding that those particular motions in

7   limine would be reciprocal) to five motions.  Plaintiffs themselves filed seven motions in limine

8   and filed a 21 page brief in support of the seven motions in limine.  See Court Docket Document

9   No. 133.  In their motions in limine, Plaintiffs cited 3 state law cases that covered approximately

10  ½ page.  Defendant filed non-oppositions to 2 of Plaintiffs' motions, and Plaintiffs filed

11  approximately 25 pages in reply briefs.  Id. at 137-141.  Given the nature of the motions in

12  limine, including supporting, opposing, and responsive materials, and considering the EEOC

13  participation, 46.7 hours is not reasonable.  The Court believes that a 14.7 hour reduction is

14  appropriate and that 32 hours is a reasonable amount of time for Mr. Smith  to have expended on

15  motions in limine.  Cf. Tise, 234 F.3d at 427; AIC Security, 55 F.3d at 1288; Ketchum, 24

16  Cal.4th at 1132; Drexler, 22 Cal. 4th 1084, 1095-96; Greene, 101 CalApp.4th at 426; Akins, 79

17  Cal.App.4th at 1134; Meister, 67 Cal.App.4th at 448-450, 455.

19        9.   *April 20, 2004 – 4.6 hours for Review of Objections and Responses to Plaintiffs's*
20             *4th Requests for Production (Bates Nos. 2027 to 2852), Telephone Conference and*
               *Correspondences*

21        Defendant argues that this expenditure is unreasonable because on April 20, 2004, Mr.

22  Smith was in a nine day trial in the case of Torres v. The Vendo Co. in Fresno County Superior

23  Court.

24        In reply, Mr. Smith declares that even though he was involved with other cases, his work

25  in this case did not stop.  Second Supplemental Smith Declaration at ¶ 12.  Mr. Smith declares

26  that the *Torres* trial took up eight days out of a two week period, and that he spent much of the

28                                              18

remaining time working on this case.

Discussion

Exhibit C to Defendant's opposition is a printout of court proceedings from the County of Fresno web page for the *Torres v. The Vendo Co.* case.  The records indicate that a jury trial was occurring on April 20, 2004, at 9:00 a.m. and the final minute order for April 20 indicates that the Court adjourned at 4:04 p.m. and would reconvene at 8:30 a.m. on April 21, 2004.  Exhibit C to Defendant's Oppositions.  Exhibit C indicates that motions in limine were handled on April 19 and that trial occurred on April 20, 21, 22, 23, 26, 27, and 28, and that the jury deliberated on April 29.  Mr. Smith does not specifically address the time he billed to the *Tamayo* case for April 20, 2004.  Defendant does not argue that the time spent is unreasonable or that the 825 documents produced required less than 4 hours for Mr. Smith to review.  Instead, Defendant argues by implication that Mr. Smith did not spend the time reviewing the documents.  However, not all cases are equal and not all cases require the same amount of time to prepare.  It is possible to work on one case while in trial for another.  Defendant has not shown that the April 20 billing is unreasonable.  See *Gomez*, 60 F.3d at 534-35.  No reduction will be made.

> 10.  *October 12-22, 2004 – 14.6 hours for various meetings, conferences, correspondences, research, and review of documents*

Defendant argues that this expenditure is unreasonable because in October 2004, Mr. Smith was in a ten day trial in the case of Perry v. City of Monterey in the Federal Northern District of California, San Jose division.

In reply, Mr. Smith declares that the case was tried before Judge Wade in San Jose, but was tried each day from approximately only 1:30 p.m. to 4:30 p.m.  Second Supplemental Smith Declaration at ¶ 12. Given the short duration of trial days, Mr. Smith declares that he was able to devote substantial time to the case at bar.  Smith declares that the work was necessary in order to prepare to try this case and that he was able to have numerous meetings and conferences with EEOC counsel, as the EEOC had an office in San Jose that was approximately 1 mile away from

court. Id. Ms. Dixon confirms that she made numerous trips to San Jose and had several

conferences with Mr. Smith while he was in trial. Supplemental Dixon Declaration at ¶ 18.

Discussion

Mr. Smith was in trial in Federal Court in San Jose, but also billed time on the Tamayo

case. Both Mr. Smith's and Ms. Dixon's supplemental declaration show that Mr. Smith was

working on both the San Jose trial and the case at bar during October 2004. Given that this trial

began in late November 2004, it is understandable that Smith would be working on this case as

well. As stated above, not all cases are the same. Defendant has not shown sufficient reason to

exclude the challenged hours, and the declarations of Mr. Smith and Ms. Dixon support the

expenditure of time. Given Defendant's argument, the Court does not find that a reduction is

warranted. See Gomez, 60 F.3d at 534-35.


*11.     June 15-17, 2004 – 14.1 hours for various meetings, conferences,
         correspondences, research, review of documents, and the settlement conference*

Defendant argues that this expenditure is unreasonable because in June 2004, Mr. Smith

was in a trial in the case of Kahira v. Do in the Fresno Superior Court. In particular, Mr. Smith

billed 9 hours on June 17, 2004, the third and final day of that trial. See Exhibit E to Opposition

to Attorney's Fees.

In reply, Mr. Smith declares that the *Kahira* trial was only a 2 ½ day trial and during that

trial, Mr. Smith continued to prepare for the trial in this case. Second Supplemental Smith

Declaration at ¶ 12.

Discussion

The minute orders in the Superior Court's docket indicate that there was a court trial on

June 15, 16, and 17, 2004, and that the case was an unlawful detainer action. See Exhibit E to

Defendant's Opposition. The minute orders for these days are timed 2:03, 2:30, and 2:37 p.m.,

respectively. The minute entry for June 15, 2004, indicates that the court was to reconvene at

9:00 a.m. the following day. The bulk of Mr. Smith's billing on these dates is on June 17, 2004,

20

in which he billed 9 hours (3.5 hours for the settlement conference, 3.0 hours for meeting with Ms. Tamayo and the EEOC regarding trial preparation, and a 2.5. hours meeting to discuss the settlement conference).  The settlement conference in this case took place on June 17, 2004, and this Court's docket reflects that Mr. Smith was present.  See Court's Docket Document No. 53. An attorney's job is not one that lends itself to regular hours and often requires work beyond "9 to 5."  Attendance at the settlement conference was obviously appropriate and discussions with Ms. Tamayo and the EEOC regarding trial are also appropriate in light of the failed settlement conference.  However, there is no indication with whom Mr. Smith met with for 2.5 hours to discuss the settlement conference and the substance of such a conference is unclear.  Considering that the Superior Court's records indicate that Mr. Smith was in trial on June 17, 2004, further explanation for the 2.5 hours is necessary since billing 9 hours, presumably after the close of trial sometime around 2:37 p.m., would mean that the day ended shortly before midnight.  The 2.5 hours is inadequately documented given these considerations.  Accordingly, the Court will strike the 2.5 hour June 17, 2004 expenditure.  Cf. Tise, 234 F.3d at 427; AIC Security, 55 F.3d at 1288; Ketchum, 24 Cal.4th at 1132; Drexler, 22 Cal. 4th 1084, 1095-96; Greene, 101 CalApp.4th at 426; Akins, 79 Cal.App.4th at 1134; Meister, 67 Cal.App.4th at 448-450, 455.

> 12.    *March 2, 2004 – 10 hours for Preparation and Deposition of Erick Johnson (5 hours), Discussion with the EEOC (0.5 hours), and Preparation for the Depositions of Shirley Ollech and John Alcorn (4.5)*

Defendant argues that this expenditure is unreasonable because Mr. Smith is a trustee on the State Center Community College District and the trustees met from 4:30 p.m. to 7:30 p.m. on March 2, 2004.

In reply, Plaintiff does not specifically address March 2, 2004.  Smith does declare that the Trustees's meetings began at 4:30 p.m., but would sometimes end at 6:30 p.m.  Second Supplemental Smith Declaration at ¶ 14.

21

Discussion

Defendant has not presented evidence that the Trustees's meeting actually ended at 7:30 p.m. on March 2, 2004.  Assuming that Mr. Smith attended the trustees meeting for 3 hours, billing 10 hours is not impossible, as this leaves 11 hours of the day unaccounted for.  The Court does not find 10 hours for the depositions and deposition preparation of 3 defense witnesses to be unreasonable, and Defendant has not sufficiently undermined this entry.  The full 10 hours is reasonable.

13.     December 7, 2004 – 16.7 hours for Trial and Review of Depositions and Outlines

Defendant argues that this expenditure is unreasonable because Mr. Smith is a trustee on the State Center Community College District and the trustees met from 4:30 p.m. to 7:30 p.m. on December 7, 2004.

In reply, Plaintiff states through Smith's Supplemental Declaration that it is possible that 2.2 hours for the Review of Erick Johnson's deposition should have been allocated to December 8, 2004, but such an error was not intentional.  Second Supplemental Smith Declaration at ¶ 14.

Discussion

As noted above, Defendant has not produced evidence that the Trustees met from 4:30 p.m. to 7:30 p.m.  By the same token, however, Mr. Smith does not deny that he attended the meeting.  In fact, the Court recessed early for Mr. Smith to attend the meeting.  Given the shortened trial time and the meeting itself, billing for a full days worth of trial and trial preparation is unreasonable, especially when considering the amount of time billed for other "full trial" days.  In light of the above, it is reasonable to reduce the hours charged for trial by 3.7 hours to reflect travel to and from and attendance at the Trustees's meeting.  Accordingly, 13 hours is a reasonable amount of time to bill for this day.[5]  Cf. Tise, 234 F.3d at 427; AIC

_____

[5]Mr. Smith's billing of 2.2 hours for deposition review and preparation for Erick Johnson's testimony is a reasonable amount of time.  Mr. Smith declares that he spent this time in preparation, but that it may have occurred on January 8, 2005.  The 2.2 hour figure will be allocated to January 8, 2005.

1    Security, 55 F.3d at 1288; Ketchum, 24 Cal.4th at 1132; Drexler, 22 Cal. 4th 1084, 1095-96;

2    Greene, 101 CalApp.4th at 426; Akins, 79 Cal.App.4th at 1134; Meister, 67 Cal.App.4th at 448-

3    450, 455.

4

5            14.    *December 11-13, 2004 & January 3, 8-10, 15-18, 2005 – Approximately 151*
                    *hours for Trial and Review of Depositions and Outlines and Conferences*
6                   *(approximately 13.7 hours billed per day)*

7            Defendant argues that this expenditure is unreasonable because Mr. Smith has billed time

8    for "trial" for days in which the trial was in recess, including weekends.

9            In reply, Mr. Smith declares that time billed for "trial" on days when there was no trial

10   was actually for trial preparation, as the description after the "trial" entry indicates.  Second

11   Supplemental Smith Declaration at ¶ 15.  Labeling the entry "trial" instead of trial preparation

12   was either an error in recording or transcription.  Id.

13           Discussion

14           Mr. Smith's use of the term "trial" instead of "trial preparation" is perhaps imprecise.

15   Nevertheless, Mr. Smith is correct that the remainder of the time entries show that he billed for

16   "trial preparation."   This was a difficult and lengthy trial that had a significant number of

17   witnesses, many of whom required an interpreter.  It is not uncommon for attorneys to spend

18   longer hours in the day preparing for trial while that trial is on-going.  This includes preparation

19   for witnesses, preparing closing arguments, responding to motions, and preparing rebuttal

20   testimony.  The mere fact that trial was not occurring in the sense that the jury was not listening

21   to testimony does not make Mr. Smith's billing for trial/trial preparation unreasonable.  A

22   reduction is not warranted.

23

24           *Additional Deductions*

25           In large cases such as this, it is not uncommon or unreasonable to have multiple attorneys

26   working on the case.  See Johnson v. University College of the University of Alabama, 706 F.2d

27

28                                                    23

1205, 1208 (11th Cir. 1983).  The declaration of Ms. Dixon indicates that the EEOC and Mr.

Smith worked to reduce redundancy and duplication in their work efforts.  <u>See</u> Dixon Declaration

at ¶¶ 5, 9, 12; Supplemental Dixon Declaration at ¶¶ 4, 19; Smith Declaration at ¶ 8.  Further, the

time records submitted by Mr. Smith show that there were numerous conferences between

himself and the EEOC.  <u>See</u> Exhibit D to Smith Declaration.  It generally appears that Mr. Smith

and the EEOC worked to reduce redundancy and inefficiency.  However, as noted above, Ms.

Dixon also declares that:

> The research and writing of the pleadings in this case was generally the result of a
> joint effort by Mr. Smith and me.  Our usual practice was to brainstorm about a
> particular pleading and the issues to be addressed, perform research, and then talk
> again.  We would then repeat the process as necessary until the pleading was
> complete.

Supplemental Dixon Declaration at ¶ 4.  This description of researching and writing pleadings by

its nature indicates redundancy, particularly in the research process.  A review of the billing and

supplemental billing records indicate that, in addition to the matters discussed above, Mr. Smith

has billed 51.5 hours for research and preparation of various filings to the court (opening brief,

reconsideration, reply to defendant's opening brief, opposition to new trial).  This figure is for

work on various documents that were performed on July 29, October 1, 5, November 12, 13, 15,

16, 18, and 22, in 2004; and February 22, 23, and April 6, in 2005.  Given Ms. Dixon's

declaration, and considering the documents involved, a reduction of these hours by 25% is

reasonable to account for redundancy and duplicative efforts.  Accordingly, the Court finds that

12.8 hours should be struck and that 38.7 hours is a reasonable expenditure for these tasks.  <u>Cf.</u>

<u>Tise</u>, 234 F.3d at 427; <u>AIC Security</u>, 55 F.3d at 1288; <u>Ketchum</u>, 24 Cal.4th at 1132; <u>Drexler</u>, 22

Cal. 4th 1084, 1095-96; <u>Greene</u>, 101 CalApp.4th at 426; <u>Akins</u>, 79 Cal.App.4th at 1134; <u>Meister</u>,

67 Cal.App.4th at 448-450, 455.

Additionally, in supplemental submissions, Mr. Smith has billed for work performed in

connection with the injunctive relief requested by the EEOC.  As Ms. Tamayo is a party to the

suit, Mr. Smith may keep her informed of filings and may reasonably review documents filed.

However, Ms. Tamayo is no longer employed by Defendant and did not wish to be reinstated. Ms. Tamayo's interest in the injunctive relief requested is therefore academic at best and the motion for injunctive relief did not require any further material research or material participation by Mr. Smith.  Mr. Smith expended 19.3 hours for review and preparation of documents, conferences, and attendance at the hearing regarding injunctive relief.  See Exhibit D of Smith Declaration; Exhibit A of Supplemental Smith Declaration.  These hours were billed on January 26, February 23, March 3, September 14, 17, 20, 21, 27, and October 16, 2005.  Given the minimal interest that Ms. Tamayo had in the injunctive proceedings, billing 19.3 hours is unreasonable.  However, attendance at the hearing and limited review of documents is reasonable.  The Court finds that 3 hours is a reasonable expenditure (based on 1 ½ hours for attendance at the hearing and 1 ½ hours for review of documents) and that 16.3 hours should be struck as unreasonably expended.  Cf. Tise, 234 F.3d at 427; AIC Security, 55 F.3d at 1288; Ketchum, 24 Cal.4th at 1132; Drexler, 22 Cal. 4th 1084, 1095-96; Greene, 101 CalApp.4th at 426; Akins, 79 Cal.App.4th at 1134; Meister, 67 Cal.App.4th at 448-450, 455.


### Total Reasonable Hours Expended By Mr. Smith

Mr. Smith claims 1433 hours were reasonably expended by him in prosecuting this case. After making the deductions as described above, a result of 1356.9 hours is obtained.  Although this figure is larger than the hours expended by local defense counsel in this case, Defendant does not indicate how many hours were expended by out of state counsel from Alaniz & Schraeder, which included work by Messrs. Alaniz, Faris, and Deason.  See Smith Declaration at ¶ 29. Furthermore, this case was very lengthy, was document intensive, and involved many witnesses, a number of whom required a translator.  See Dixon Declaration at ¶¶ 9, 10; Smith Declaration at ¶ 29. Additionally, this case was vigorously defended and, from the unrebutted declaration of Mr. Smith, Defendant showed very little interest in settlement or alternative dispute resolution. Smith Declaration at ¶¶ 31-35; cf. Green v. Administrators of Tulane Educ. Fund, 284 F.3d 642,

663 (5th Cir. 2002).  Defendant is entitled to mount a vigorous defense, but when that defense fails, it cannot complain about the reasonable cost to successfully overcome that defense.  Cf. Green, 284 F.3d at 663.  Also, Plaintiff had the burden of proof and successfully met that burden at trial on nearly every claim that went to the jury and obtained excellent results for Ms. Tamayo.[6]  Finally, as Mr. Smith was the most experienced trial attorney on Plaintiff's side, he took the lead in trial preparation and at trial.  See Smith Declaration at ¶ 8; Dixon Declaration at ¶ 12.  Given the above, 1359.4 hours is a reasonable expenditure.  Cf. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1151 (9th Cir. 2001) (noting that numerous factors may cause a plaintiff to expend more time than a defendant in the prosecution of a case); Chabner v. United of Omaha Life Ins. Co., 1999 U.S.Dist. LEXIS 16552 at 9 (N.D. Cal. 1999) (noting factors that may cause a plaintiff to expend more time than a defendant); Second Supplemental Smith Declaration at ¶ 16.

### 2.  Reasonable  Hourly Rate

The fee applicant "has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation."  Blum, 465 U.S. at 896 n.11; Dang, 422 F.3d at 814; Schwarz v. Secretary of Health and Human Servs., 73 F.3d 895, 908 (9th Cir. 1995).  The Ninth Circuit has elaborated that:

> Once the number of hours is set, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." [Chalmers v. City of Los Angeles, 796 F.2d 796 F.2d1205, 1210.]  This determination "is not made by reference to rates actually charged by the prevailing party."  Id.  The court

---

[6]Plaintiff dropped her 1999 retaliation claims prior to trial and did not receive punitive damages under FEHA.  The "the results obtained" is a Kerr factor that has been subsumed in the lodestar calculation.  Van Gerwen, 214 F.3d at 1045 n.9; Morales, 96 F.3d at 364 n.9.  The 1999 retaliation claim encompassed a time period that required investigation for Plaintiff's other claims and was related to Tamayo's complaint of hostile environment sexual harassment.  Further, Plaintiff did receive punitive damages under federal law.  The same conduct that formed the basis for the federal punitive damages award was argued by Plaintiff to be sufficient for state law; in other words, the same evidence was sufficient for a finding of "reckless disregard" but not malice.  Additionally, the jury found in favor of Plaintiff on all other claims.  This is an "excellent result" and no reduction in hours is necessary for the withdrawn 1999 retaliation claim or failed FEHA punitive damages claim.  See Dang, 422 F.3d at 813; Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001).

should use the prevailing market rate in the community for similar services of lawyers "of reasonably comparable skill, experience, and reputation." Id. at 1210-11.  Either current or historical rates prevailing rates may be used.  Missouri v. Jenkins, 491 U.S. 271 (1984).  The use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable; the district court must look to the "totality of the circumstances and the relevant factors, including delay in payment." [Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987).]

D'Emanuelle v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1384 (9th Cir. 1990); cf.

Ketchum, 24 Cal.4th at 1139 ("Indeed, the 'reasonable hourly rate [used to calculate the lodestar]

is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, the

amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the

case.'").  The "relevant legal community" in the lodestar calculation is generally the forum in

which the district court sits.[7]  Mendenhall v. NTSB, 213 F.3d 464, 471 (9th Cir. 2000); Barjon v.

Dalton, 132 F.3d 496, 500 (9th Cir. 1997); Schwarz, 73 F.3d at 906; Deukmejian, 987 F.2d at

1405; Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir. 1991); cf. Childrens Hospital and

Medical Center v. Belshe, 97 Cal. App. 4th 740, 782-783 (2002) (upholding rate in a case tried in

San Francisco after trial court reviewed rates of attorneys in the San Francisco Bay area); A & S

Air Conditioning v. John J. Moore Co., 184 Cal.App.2d 617, 621 (1960) ("The determination of

reasonable attorneys' fees is controlled by the amounts customarily charged in the locale of the

action, here Alameda County.").

*Plaintiff's Argument*

Plaintiff argues that Mr. Smith is entitled to an hourly rate of $425.  Plaintiff argues that

under both Federal and California law, "the critical factor is the fair market value of the work

performed, as measured by the rates charged by comparably skilled and experienced attorneys for

complex federal litigation."  Plaintiff's Fee Motion at 20:6-8.  Plaintiff focuses on reputation and

has submitted the affidavits of her own counsel, a Fresno attorney (Andrew Jones) and two San

---

[7]There are narrow exceptions to the general rule that the relevant legal community is the forum in which the court sits.  See Schwarz, 73 F.3d at 907; cf. Horsford v. Board of Trustee of California State Univ., 132 Cal.App.4th 359, 396-97 (2005) (finding court abused discretion in not considering "out of town" San Francisco rates where plaintiff was unable to obtain local counsel).  Plaintiff, however, does not argue that a recognized exception to the general rule applies.

Francisco attorneys (Richard Pearl and Mary Dryovage).  The San Francisco attorneys indicate that they charge between$495 and $425 per hour and Ms. Dryovage also indicates that she is familiar with Mr. Smith's reputation, which is excellent.

However, as set forth above, in the Ninth Circuit, the market rate or the relevant legal community is generally the location of the district court.  Mendenhall, 213 F.3d at 471; Barjon, 132 F.3d at 500); Schwarz, 73 F.3d at 906; Deukmejian, 987 F.2d at 1405; Davis, 927 F.2d at 1488; cf. A & S Air Conditioning, 184 Cal.App.2d at 621.  This Court sits in the Eastern District of California – Fresno Division, it does not sit in San Francisco, Los Angeles, the Central District of California, or the Northern District of California.  The affidavits of Richard Pearl and Mary Dryovage will be disregarded with respect to the rates charged by those attorneys as such information is irrelevant to this case and this motion.[8]

*Evidence Of Reasonable Attorney's Rates For The Eastern District Of California –*
*Fresno Division*

There are three declarations that have been submitted that are relevant to setting a fee in this case:  Mr. Smith, Mr. Jones, and Mr. Carruth, who all practice law in Fresno.

Plaintiff's trial counsel, William Smith, has submitted a declaration in which he states that:  he has been licensed to practice law in California for approximately 32 years; has tried over 30 cases to verdict; was the most experienced trial lawyer on the Plaintiff's side; has lectured on civil rights and sexual harassment; has been active within the Fresno community and the Fresno legal community (Mr. Smith has chaired various committees and is a member of numerous organizations); has been utilized as an expert concerning attorney's fees; has been utilized as a mediator in employment disputes; has authored numerous articles and lectured on civil rights (including sex harassment); and currently charges $425 per hour for his legal services.  See

---

[8]For the same reason, the citation to the case from Alameda County (which is in the Northern District of California), *Kotla v. Regents of University of California*, is unpersuasive.  Furthermore, Plaintiff has submitted articles and publications regarding attorney rates nationally and in various cities.  None of the articles deal with the Fresno area and thus, will be disregarded.  See Schwarz, 73 F.3d at 908 (noting that district court rightly disregarded surveys where none of the surveys dealt with rates charged by attorneys in either Portland or Phoenix).

Declaration of William J. Smith at ¶¶ 2-4, 11-18.  Additionally, Mr. Smith declares that in 2000 he was awarded attorneys fees of $400 per hour by Judge Friedman of the U.S. District Court for the District of Columbia in the case of *Pigford v. Glickman*.  Id. at ¶ 20.  Further, in 1992, Judge Wanger of this District and Division awarded Mr. Smith an $185 hourly rate in *Oyeka v. County of Madera*, CV F 90-139 OWW and also multiplied the lodestar figure by 1.7 in part to reflect the "economic reality of such contingency fee litigation."  Id.  Further, Mr. Smith declares that Judge Ramirez of this District but the Sacramento Division award Mr. Smith $195 per hour in 1986.[9]  Id. at ¶ 21.  In a supplemental declaration, Mr. Smith attached a 1996 award for attorney's fees that he received from Judge Twisselman of the Kern County Superior Court.  Exhibit B of Second Supplemental Smith Declaration.  In that case, Mr. Smith was awarded $225 per hour and received a 1.5 enhancement modifier.  Id.

Plaintiff has also submitted the affidavit of Andrew Jones in support of her motion.  In his declaration, Mr. Jones declares that: he was licensed and has been practicing law since 1977; he has tried over 40 cases before a jury; his practice emphasis was in personal injury until 1996; from 1996 to the present Mr. Jones practice focuses primarily on employment law; he is AV rated in Martindale-Hubble; he charges $400 to do limited consultations; since 1999 he has had an effective hourly rate of $500 and since 2002 an effective hourly rate of $700; he was awarded a lodestar rate of $350 by a Fresno Superior Court in the case of Soza v. William Ziering, Inc.; and based on his experience, a fee of $425 per hour for Mr. Smith's services is reasonable.  Jones Declaration at ¶¶ 1-11.  However, Mr. Jones does not give the year the *Soza* case was decided and does not describe what kind of case *Soza* was, let alone whether it is comparable to the case at bar.

In opposition, Defendant has submitted the affidavit of its lead counsel, Lowell Carruth.

---

[9]Although the Eastern District encompasses Sacramento, this case did not occur in the Sacramento Division, rather it occurred in Fresno.  Cf. Deukmajian, 987 F.2d at 1398-99 (holding that the rates charged in the "Eastern District of California – Sacramento" controlled).  However, the rates awarded in the Sacramento Division are closer in comparison than rates awarded in either the Central or Northern Districts of California.

In his declaration, Mr. Carruth declares that:  he began practicing law in Fresno in 1963, he has tried over 200 jury trials to verdict, he is a fellow in the American College of Trial Lawyers (which Mr. Jones and Mr. Smith are not), he was a founding member of the San Joaquin Chapter of the American Board of Trial Advocates and is a diplomat in that organization (of which Mr. Jones and Mr. Smith are not members), he has held every office of the Association of Defense Counsel of Northern California and Nevada, and he charged $225 per hour for his work in this case.  Exhibit A to Defendant's Opposition.

Additionally, Defendant has submitted a January 2003 declaration by Mr. Smith in which Mr. Smith seeks monetary sanctions for discovery abuse.  In that declaration, Mr. Smith indicates that the 2003 case was a racial discrimination case and that his customary rate "for litigation law and motion work such as this is $175 per hour."  Exhibit B to Defendant's Opposition.  In response, Plaintiff argues that Mr. Smith was charging a discounted rate because the case was a racial discrimination case and the rate quoted was for work that did not involve a complex jury trial like this case, rather, that declaration involved mere discovery sanctions.

*Resolution*

From Mr. Smith's and Ms. Dixon's declarations and from the Court's observations at trial, Mr. Smith's experience, skill and reputation are excellent.  Mr. Smith's declared rate of $425, however, is not appropriately considered in determining a reasonable rate.[10]  Mendenhall, 214 F.3d at 471; D'Emanuelle, 904 F.2d at 1384.  Mr. Jones declares that he charges $400 for a consultation and is awarded an effective rate (which based on the affidavit of Mr. Smith appears to be the total amount of fees awarded after a multiplier has been added) of between $500 and $700.  Jones Declaration at ¶ 9.  Jones, however, does not specifically state his customary rate for sexual harassment cases.  Jones does declare that a Fresno Court awarded him $350 per hour as

---

[10]Plaintiff cites the case of *Children's Hospital and Medical Center v. Belshe*, 97 Cal.App.4th 740, 783 (2002) in arguing that a rate of $425 is reasonable.  However, *Belshe* was a case tried in San Francisco, the plaintiff's attorneys practiced in the San Francisco area, the case arose in the San Francisco area, and evidence of San Francisco area rates were used.  *Belshe*, 97 Cal.App.4th at 782-83.  This is in line with cases such as *Mendenhall*, *Schwarz*, and *Deukmajian* in the Ninth Circuit.  *Belshe* does not aid Plaintiff.

part of a lodestar, but that figure is not entirely persuasive as Jones has not given any details

surrounding that case.  Id. at ¶ 8.  With respect to Mr. Carruth's affidavit, Mr. Carruth's

reputation, skill and experience are also excellent.  However, Mr. Carruth was a defense counsel

in this case and rates charged by defense counsel are not always apt in setting rates for a

plaintiff's attorney as defense rates can reflect different considerations, including discounts given

to favored clients.  See Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996); Chabner v. United of

Omaha Life Ins. Co., 1999 U.S.Dist. LEXIS 16552 at 16 n.2 (N.D. Cal. 1999).[11]  Mr. Carruth's

charged rate of $225 is more in line with Judge Wanger's $185 rate and Judge Twisselman's

$225 rate to Mr. Smith.  However, those awards are somewhat "stale" as they were awarded in

1992 and 1996 respectively.  Plaintiff has failed to sustain her burden that $425 is a reasonable

rate in the Eastern District of California – Fresno.  However, given the above considerations and

evidence presented, the Court finds that a reasonable rate for Mr. Smith's services in the Eastern

District of California – Fresno is $275 per hour.  Cf. Drexler, 22 Cal.4th at 1096 (noting that

under California law, the trial court may set the billing rate based on its experience and without

the aid of, or contrary to, expert evidence).[12]

In light of the above, the court will award Mr. Smith attorney's fees based on an hourly

rate of $275.  Therefore, based on 1356.9 hours awarded and an hourly rate of  $275, the Court

finds that the lodestar figure for this case is $373,147.50.

C.  Kerr Factors/Enhancement

Plaintiff does not argue the *Kerr* factors and instead relies strictly on California law to

argue that a multiplier of 2 is appropriate.  See Plaintiff's Motion For Fees at 13:1-5 & n.6.

Instead, Plaintiff argues that a multiplier is justified under California law because of the

contingent nature of a fee, the preclusion of other employment, the undesirability of the case, and

---

[11]Affirmed, 225 F.3d 1042, 1053 n.11 (9th Cir. 2000).

[12]The $275 rate for Mr. Smith's work is consistent with this Court's experience in awarding fees for counsel in the area.  In the Court's experience, this is a high end rate and takes into consideration the difficulty of the case and any "undesirability" associated with this case.

the results obtained.  With respect to the contingent nature of the fee, Mr. Smith declares that he

has not received any compensation for this case, and considering cash flow and mounting

expenses, his office will not take a case on a contingency basis unless the case can be reasonably

projected to result in a multiplier enhancement of 2.[13]  Smith Declaration at ¶¶ 39, 43.  Further,

Mr. Smith declares that this case was taken on a contingency basis because Ms. Tamayo was

essentially impecunious and that she has only paid $150 towards costs incurred; Mr. Smith has

received no other compensation for costs incurred.  Id. at ¶ 10.  Also, "Plaintiff is a signatory to a

contingency fee contract in which Plaintiff's counsel have agreed to be paid a portion of any

amount recovered only upon success in this litigation, including success of the fee petition."  Id.

With respect to the preclusion of other employment, Mr. Smith declares that from 2003 to 2004,

his office received on average of between 75 to 100 new case calls each month and, because he

was "unavailable or tied up in the Tamayo matter," he was unable to return most of these calls.

Id. at ¶ 44.  Additionally, because Mr. Smith's office had only two attorneys, and sometimes only

one, the firm had to turn down essentially all of these prospective new cases.  Id.

Defendant argues that a lodestar enhancement is not justified.  Defendant argues that *City

of Burlington v. Dague* prohibits enhancement based on the contingent nature of the case.

Defendant also argues that during the pendency of this case, Mr. Smith filed 20 cases in Fresno

area courts from September 13, 2003, to February 4, 2005.  See Exhibit F to Defendant's

Opposition.  Defendant also argues that this case is clearly distinguishable from *Guam Society of

Obstetricians and Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996) (affirming enhancement

due to undesirability of case in which abortion regulations were challenged).  Finally, Defendant

argues that enhancement based on the results obtained is only appropriate in exceptional cases,

and the results obtained were not exceptional.

In response, Mr. Smith declares that the new Fresno area cases that he filed had statute of

---

[13]Mr. Smith declares that loans often must be taken in order to survive.  See Smith Declaration at ¶ 43.
However, Mr. Smith does not declare that a loan was taken in this case.

1   limitations concerns that required their timely filing.  Second Supplemental Smith Declaration at

2   ¶ 13.  Further, Mr. Smith declares that as the primary partner in the firm, he signs virtually all the

3   complaints even if he is not the attorney who spent the time to prepare the complaint and

4   investigate the case.  Id.  Additionally, Mr. Smith notes that his partner, Melvin Richtel, was in

5   the process of leaving the law firm and was turning over cases to Mr. Smith.  Id.  With respect to

6   the contingent nature of the fee, Mr. Smith argues that Defendant has not rebutted the fact that

7   his office took a great risk in taking this case.  Id. at ¶ 18.  Mr. Smith declares that not all of his

8   cases are financially fruitful and unless his fee award includes some compensation for that risk,

9   he and other attorneys will refuse to take cases similar to this one in the future.[14]  Id.

10  Additionally, the declaration of Andrew Jones states that, because this case was taken on a

11  contingent basis, Mr. Smith "could reasonably expect a significant enhancement of the lodestar

12  as a premium for the great risk he took, as well as other factors."  Jones Declaration at ¶ 11.

13                                  **California Lodestar Adjustment**

14          California law has deviated from federal law with respect to the use of multipliers.  See

15  Beaty v. BET Holdings, Inc., 222 F.3d 607, 611 n.1 (9th Cir. 2000); Ketchum, 24 Cal.4th at

16  1136-37.  Under California law, a lodestar figure may be adjusted based on several

17  considerations, including: (1) the novelty and difficulty of the questions involved; (2) the skill

18  displayed in presenting them; (3) the extent to which the nature of the litigation precluded other

19  employment by the attorneys; and (4) the contingency of the fee award.  See Ketchum, 24 Cal.4th

20  at 1132 (citing Serrano v. Priest, 20 Cal.3d 25, 49 (1977)); Horsford v. Board of Trustee of

21  California State Univ., 132 Cal.App.4th 359, 399-400 (2005).  The first three "*Ketchum*" factors

22

23          [14]The "results obtained" is a factor that has been subsumed in the lodestar calculation and has already been

24  considered by the court.  Van Gerwen, 214 F.3d at 1045 n.9; Morales, 96 F.3d at 364 n.9.  Additionally, under
    California law, the "undesirability of the case" is a factor that has been subsumed in setting the reasonable rate for

25  compensation.  Ketchum, 24 Cal.4th at 1139.  The "undesirability" of the case has already been considered by the
    Court in setting the reasonable rate of compensation.  Accordingly, an enhancement based on the results obtained

26  and the undesirability of the case is inappropriate as the Court has already considered these factors in computing the
    lodestar amount.  See Van Gerwen, 214 F.3d at 1045 n.9; Morales, 96 F.3d at 364 n. 9; Ketchum, 24 Cal.4th at

27  1139.

28                                              33

are also *Kerr* factors and the first and second "*Ketchum*' factors have been subsumed within the lodestar computation under federal law. Cf. Morales, 96 F.3d at 364 n.9 with Ketchum, 24 Cal.4th at 1132. Consideration of the contingent nature of a fee is permissible under California law, but not federal law. Cf. Van Gerwen, 214 F.3d at 1045 n.2 with Horsford, 132 Cal.App.4th at 394-95. "Contingency fee enhancements" are "intended to compensate the risk of loss generally in contingency cases, as a class." Ketchum, 24 Cal.4th at 1133. "The multiplier for contingent risk brings the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." Greene, 101 Cal.App.4th at 427 (quoting Ketchum, 24 Cal.4th at 1132). "The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous . . . it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." Ketchum, 24 Cal.4th at 1138. "It has long been recognized . . . that the contingent and deferred nature of the fee award in a civil rights or other case with statutory attorney fees requires that the fee be adjusted in some manner to reflect the fact that the fair market value of legal services provided on that basis is greater than the equivalent noncontingent hourly rate." Horsford, 132 Cal.App.4th at 394-95. California courts recognize that attorneys who do not receive compensation for bearing the risk of failure "will be reluctant to accept fee award cases." Ketchum, 24 Cal.4th at 1133; Horsford, 132 Cal.App.4th at 395. However, California law does not compel courts to award a multiplier in every successful case. Ketchum, 24 Cal.4th at 1138. The California Supreme Court has explained:

> Of course, the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof. In each case, the trial court should consider whether, and to what extent, the attorney and client have been able to mitigate the risk of nonpayment, e.g., because the client has agreed to pay some

1   portion of the lodestar amount regardless of outcome. It should also consider the
2   degree to which the relevant market compensates for contingency risk,
    extraordinary skill, or other factors under *Serrano III*. We emphasize that when
3   determining the appropriate enhancement, a trial court should not consider these
    factors to the extent they are already encompassed within the lodestar.

4   Ketchum, 24 Cal.4th at 1138-39 (internal citations omitted).   The party seeking enhancement

5   bears the burden of proving that fee enhancement is appropriate.   Ketchum, 24 Cal.4th at 1138;

6   Greene, 101 Cal.App.4th at 429.

7       Discussion

8       As applied to this case, it is clear that Mr. Smith expended a substantial amount of time in

9   the successful prosecution of this case.  Mr. Smith's declaration indicates that he was unable to

10  call and interview potential clients and thus had to turn away virtually all newcomers.  A review

11  of the billing records indicate that this was likely the case in November 2004, December 2004,

12  and January 2005.  Although there are substantial hours billed at other points, the billing does not

13  support the assertion that this case is the reason for turning away all new clients from 2003 to

14  December 2004.  See Exhibit D to Smith Declaration.  Additionally, Defendant's Exhibit F

15  shows that 20 new cases were filed in the Fresno area alone from September 2003 to February

16  2005 by Mr. Smith.  Further, Mr. Smith was able to try three other "shorter" cases (*Torres*,

17  *Kahira*, and *Perry*), in this time period.  Accordingly, the preclusion of other employment at best

18  supports a minimal enhancement.

19      With respect to the contingent nature of the fee, there is no doubt that Mr. Smith has

20  taken a risk that he will not be paid.  Additionally, it is undisputed that Ms. Tamayo did not have

21  the means to pay Mr. Smith.  Also, the declaration of Mr. Jones indicates that a lodestar

22  enhancement is "reasonably anticipated" by Mr. Smith.  Furthermore, Judge Twissleman in Kern

23  County awarded a 1.5 multiplier to the lodestar in 1996, although the nature of that case is

24  unclear.  Also, Judge Wanger awarded a multiplier of 1.7 in the *Oyeka* case based in part on the

25  contingent nature of the fee agreement.  See Declaration of William J. Smith at ¶ 20; Exhibit B to

26  Supplemental Smith Declaration.  There is no evidence suggesting that the state courts within

27

28                                              35

1    this area do not enhance on the basis of contingency; in fact, the recent appellate case of

2    *Horsford* is from the 5th District Court of Appeals, which sits in Fresno, and has strong language

3    that endorses fee multipliers on the basis of a contingent fee.  Under California law, enhancement

4    based on the contingency of the fee is not considered a windfall, but is legitimate compensation.

5    This is not a case where the injury to Ms. Tamayo was slight, and the Court does not see that a

6    fee enhancement in this case would be a tool to encourage litigation in "questionable claims."

7    See Weeks v. Baker & McKenzie, 63 Cal.App.4th 1128, 1175 (1998).  However, although Mr.

8    Smith advanced costs and clearly assumed risk, the EEOC was also a party to this action and was

9    representing Ms. Tamayo's Title VII interests before Mr. Smith was retained.  Mr. Smith states

10   that he has paid costs, but he does not state what costs were paid by the EEOC, e.g. for

11   transcripts or deposition costs.  Obviously Mr. Smith's internal office expenses would be

12   unaffected by the EEOC, but it is unreasonable to assume that Mr. Smith bore the burden of all

13   of Plaintiffs's costs in this case especially considering that Mr. Smith intervened after the EEOC

14   had filed suit.  Nevertheless, a fee enhancement is warranted under California law because of the

15   contingent nature of the case, but the modifier should be considerably less than 2.

16        Given the above considerations, the Court finds that a multiplier enhancement of 1.2 is

17   fair and reasonable under the circumstances of this case.  See Ketchum, 24 Cal.4th at 1132-34;

18   Drexler, 22 Cal.4th at 1095-96; Greene, 101 Cal.App.4th at 426-27.  Multiplying the lodestar

19   amount of $373,147.50 by 1.2 yields a fee of $447,777.00.

20

21   **II.    FEES FOR FEE COUNSEL**

22        Generally, "time spent in establishing an amount of fees awardable . . . is compensable."

23   Guerrero v. Cummings, 70 F.3d 1111, 1113 (9th Cir. 1995); Ackerman v. Western Elec. Co., 643

24   F.Supp. 836, 866 (C.D. Cal. 1986); cf. Estate of Trynin, 49 Cal.3d 868, 875-76 (1989).  Here,

25   Plaintiff seeks attorney's fees for fee counsel, Richard Pearl.  Plaintiff seeks to have 68.95 hours

26   reimbursed at a rate of $495 per hour.  Defendant has made no arguments regarding either the

27

28                                          36

1    amount of hours or the rate charged.

2         Nevertheless, it is Plaintiff's burden to establish a reasonable rate in the relevant

3    community for the services performed. Blum, 465 U.S. at 896 n.11; Dang, 422 F.3d at 814;

4    Schwarz, 73 F.3d at 908. As discussed above, the relevant community is generally the location

5    in which the district court sits, i.e. the Eastern District of California – Fresno. Mendenhall, 213

6    F.3d at 471; Barjon, 132 F.3d at 500); Schwarz, 73 F.3d at 906; Deukmejian, 987 F.2d at 1405;

7    Davis, 927 F.2d at 1488; cf. A & S Air Conditioning, 184 Cal.App.2d at 621. The declaration of

8    Mr. Pearl sets his rate at $495. However, Mr. Pearl practices in San Francisco and not Fresno.

9    Moreover, the basis for a reasonable rate for services rendered is not the amount charged by the

10   prevailing attorneys. Mendenhall, 214 F.3d at 471; D'Emanuelle, 904 F.2d at 1384. Thus,

11   Plaintiff has presented no competent evidence regarding a reasonable rate for a highly

12   experienced fee counsel in the Eastern District of California – Fresno. Plaintiff has failed to

13   meet her burden under Federal law.

14        However, under California law, the Court may set a reasonable rate based on its

15   experience and without the aid of or contrary to expert evidence. See Drexler, 22 Cal.4th at

16   1096. Based on the court's experience, and considering Pearl's credentials and 30 years

17   experience, see Exhibit A to Declaration of Richard Pearl, the Court will set a rate for Mr. Pearl

18   of $275 per hour as a reasonable rate for the Fresno area.

19        With respect to the hours claimed, Defendant has not specified any of the hours as

20   unreasonable, and a review of the billing information submitted by Mr. Pearl does not indicate

21   that his billed hours are unreasonable. Considering Defendant's opposition to the fee motion, the

22   documents filed with respect to attorney's fees, and the results obtained, 68.95 hours is a

23   reasonable amount of time expended.

24        In light of the above, the court will award Mr. Pearl attorney's fees based on an hourly

25   rate of $275. Therefore, based on 68.95  hours awarded and an hourly rate of  $275, the lodestar

26   amount is $18,961.25.

27

28                                            37

Based on the contingent nature of the Mr. Pearl's agreement with Plaintiff/Mr. Smith, Plaintiff argues that a 1.2 multiplier is appropriate under California law.  However, Pearl's participation in this case began after Plaintiff obtained a substantial verdict in her favor under both Federal and California law.  Given that under both Title VII and FEHA a prevailing party is normally entitled to attorney's fees, an award of fees was virtually inevitable.  Even considering the contingent nature of Pearl's fee and the possibility of reversal on appeal, the Court does not find that a modifier is warranted and that an award of $18,961.25 is reasonable and appropriate.  See Ketchum, 24 Cal.4th at 1138-39, 1141-42; Drexler, 22 Cal.4th at 1096.

## MOTION FOR CONTINUANCE/DISCOVERY

In Defendant's opposition, Defendant made a request for fee related discovery on the basis of exaggerated billing rates and exaggerated hours and contradictory assertions regarding preclusion of other work.  Defendant did not state what kind of discovery it wanted or suggest any discovery schedule.  Defendant did not file a motion for discovery in connection with its opposition.  On November 29, 2005, after this Court had received additional replies from both parties and had taken the matter under submission, Defendant filed a motion for continuance on Plaintiff's fee motion pending reasonable discovery.  Defendant argues that discovery is warranted because Plaintiff is requesting a $425 rate, unreasonably states that he was wholly precluded from taking other work, and the billing records give the impression that the EEOC did nothing to prepare for this trial; thus, there is a strong possibility that Mr. Smith's hours include substantial duplicated efforts.  Citing *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565 (11th Cir. 1985), Defendant argues that given the substantial uncertainty, it would be an abuse of discretion not to allow discovery.

Plaintiff has filed an opposition to Defendant's motion.  Plaintiff argues that Defendant's motion should be denied because: (1) it is axiomatic that once a matter is taken under submission, further briefing or argument may not be made without the Court's permission (which

Defendant did not obtain); (2) any motion "related" to Plaintiff's Fee Motion was required to be filed when Defendant filed its opposition to the motion, see E.D. Local Rule 28-230, and Defendant's motion was clearly untimely; and (3) Plaintiff addressed Defendant's request for discovery in its reply and explained that further discovery was inappropriate because there are no "special circumstances" in this case, further discovery would not be of substantial assistance as the Court already has a full record before it, see Martinez v. Schock Transfer & Warehouse Co., 789 F.2d 848, 849-50 (10th Cir. 1986), and Defendant's request is untimely.

Discussion

Eastern District Local Rule 28-230(e) provides:

> Any counter-motion or other motion that a party may desire to make that is related to the general subject matter fo the original motion shall be served and filed with the Clerk in the manner and on the date prescribed for the filing of opposition (filed with the clerk within 14 days of hearing date).  In the event such counter-motion or other related motion is filed, the Court may continue the hearing on the original and all related motions so as to give all parties reasonable opportunity to serve and file oppositions and replies to all pending motions.

E.D. Local Rule 28-230(e).

A motion for further discovery is clearly a motion related to Defendant's opposition and Plaintiff's fee motion.  The time for filing this motion was at the time of Defendant's opposition, not November 29, 2005, after the Court had taken the matter under submission three weeks prior. Additionally, considering the declarations and billing records submitted, it is not clear that additional discovery would be of substantial assistance.  This is especially true considering that two of Defendant's primary complaints, Mr. Smith's $425 requested rate and claims of work preclusion, have been decided substantially in Defendant's favor.  Additionally, the Court has reduced for some instances of redundancy that Defendant has specifically challenged. Accordingly, Defendant's motion is denied.

39

1

## CONCLUSION

2      For the above reasons, IT IS HEREBY ORDERED that:

3      1.     Plaintiff-Intervenor's motion for attorney's fees for work performed by Mr.

4      William J. Smith is GRANTED and Plaintiff-Intervenor is awarded $447,777.00

5      as reasonable attorney's fees;

6      2.     Plaintiff-Intervenor's motion for attorney's fees for work performed by Mr.

7      Richard Pearl is GRANTED and Plaintiff-Intervenor is awarded $18,961.25 as

8      reasonable attorney's fees; and

9      3.     Defendant's motion for continuance is DENIED.

10

11  IT IS SO ORDERED.

12

**Dated:**   **March 1, 2006**              **/s/ Anthony W. Ishii**

13  0m8i78                           UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28